```
 1                           THE UNITED STATES DISTRICT COURT
                             FOR THE DISTRICT OF NEW JERSEY
 2                           CIVIL ACTION NO. 10-5096 (FSH)
          - - - - - - - - - - - - - - - - - x
 3                                          :
          LUKE STEWART, et al.,             :
 4                                          :          TRANSCRIPT
                      Plaintiffs,           :              OF
 5              -v-                          :         PROCEEDINGS
                                            :         (CONFERENCE)
 6        SAMSUNG ELECTRONICS AMERICA, INC.,:
                                            :
 7              Defendant.                  :
          - - - - - - - - - - - - - - - - - x
 8                             December 14, 2011
                               Newark, New Jersey
 9
          B E F O R E:   HONORABLE FAITH S. HOCHBERG, U.S.D.J.
10
          A P P E A R A N C E S:
11
                        COHEN MILSTEIN, ESQS.,
12                      BY:  ANDREW N. FRIEDMAN, ESQ.,
                                  &
13                      CHIMICLES & TIKELLIS, ESQS.,
                        BY:   STEVEN A. SCHWARTZ, ESQ.,
14                          BENJAMIN F. JOHNS, ESQ.,
                                  &
15                      HORWITZ, HORWITZ & PARADIS, ESQS.,
                        BY:  GINA M. TUFARO, ESQ.,
16                          JUSTIN SHANE, ESQ.,
                        Attorneys for the Plaintiffs
17
                        ANSA ASSUNCAO, ESQS.,
18                      BY:   ROBERT A. ASSUNCAO, ESQ.,
                            STEVEN GOOBY, ESQ.,
19                          JOHN MUELLER, ESQ.,
                        Attorneys for the Defendant
20        ANYONE INTERESTED IN PURCHASING A COPY OF THIS TRANSCRIPT
          MAY CONTACT JOHN STONE 973 824-4483 - jkstoneage@verizon.net
21        _____
          Purusant to Section 753 Title 28 United States Code, the
22        following transcript is certified to be an accurate record
          taken stenographically in the above entitled proceedings.
23
          s/John K. Stone
24        _____
          JOHN KEVIN STONE,
25        Official Court Reporter
```

 1                    THE COURT:  Please be seated.

 2                    Good afternoon, counsel.

 3                    ( Counsel respond good afternoon ).

 4                    THE COURT:  All right.

 5                    I have an appearance sheet that's one of the

 6          longest ones I've had in awhile.

 7                    Who will -- if you'd like to note your appearances

 8          for the record you of course may.  You might as well I

 9          guess.  And then indicate who will be speaking.

10                    MR. SCHWARTZ:  Good afternoon, Your Honor.

11                    Steven Schwartz from Chimicles and Tikellis for the

12          plaintiffs.  I'll be primarily the spokesperson.

13                    THE COURT:  All right.

14                    Mr. Schwartz, you get the asterisk.

15                    MR. ASSUNCAO:  Robert Assuncao from Ansa Assuncao

16          on behalf of Samsung Electronics, Inc.  And I'll be the

17          primary spokesman for defendant Samsung.

18                    THE COURT:  All right.  Thank you.

19                    MR. FRIEDMAN:  Your Honor, if I may, it's Andrew

20          Friedman from Cohen Milstein.  I won't have an asterisk next

21          to my name.

22                    THE COURT:  Okay.  You're welcome.

23                    MS. TUFARO:  Gina Tufaro of Horwitz, Horwitz and

24          Paradis, no asterisk next to my name.

25                    MR. JOHNS:  Good afternoon.

```
 1                    Ben Johns, also from the Chimicles firm.  I don't
 2        need an asterisk either.
 3                    THE COURT:  Okay.
 4                    MR. SCHWARTZ:  With Your Honor's permission, I'd
 5        like to introduce the plaintiffs who have traveled here
 6        today.
 7                    THE COURT:  Yes, please.
 8                    And I'll tell you in a minute why they're here.
 9                    MR. SCHWARTZ:  From New Jersey we have Jack Petty.
10                    MR. PETTY:  Good afternoon, Your Honor.
11                    THE COURT:  Good afternoon.
12                    MR. SCHWARTZ:  And from Pennsylvania we have Luke
13        Stewart.
14                    MR. STEWART:  Good afternoon, Your Honor.
15                    THE COURT:  Good afternoon.
16                    MR. SCHWARTZ:  And from Massachusetts, Paul
17        Bernadin.
18                    MR. BERNADIN:  Good afternoon, Your Honor.
19                    THE COURT:  Good afternoon.
20                    MR. SCHWARTZ:  And in addition, we had sent a
21        letter about having designees and they happen to have been
22        from Arizona and Texas and they have traveled here, so I'll
23        introduce from Arizona, Brian Hauser.
24                    THE COURT:  Good afternoon, Mr. Hauser.
25                    MR. HAUSER:  Good afternoon, Your Honor.
```

```
 1                    THE COURT:  I'm sure it's a lot colder here than in
 2      Arizona.
 3                    MR. HAUSER:  Slightly.
 4                    THE COURT:  Where are you in Arizona?
 5                    MR. HAUSER:  Scottsdale.
 6                    THE COURT:  That's a pretty nice place.
 7                    MR. SCHWARTZ:  I'm trying to arrange a trip.
 8                    And Eric Chodun from Texas.
 9                    MR. CHODUN:  Good afternoon.
10                    THE COURT:  Good afternoon to you.  Which part of
11      Texas?
12                    MR. CHODUN:  Dallas.
13                    THE COURT:  Dallas.
14                    It's hard for the court reporter to take down my
15      poor effort to have a Dallas accent.  He doesn't even need
16      to put down that I tried.
17                    Okay.  Is there anybody else that the defense
18      counsel wants to introduce, even without an asterisk?
19                    MR. ASSUNCAO:  Your Honor, I'd like to introduce
20      Mr. Troisi, Michelangelo Troisi.  He's the Senior Counsel
21      and Director of Litigation at Samsung.
22                    MR. TROISI:  Hello, Your Honor.
23                    THE COURT:  Hi.
24                    MR. GOOBY:  Steven Gooby, from Ansa Assuncao law
25      firm.
```

```
 1                    MR. MUELLER:  Good afternoon, Your Honor.

 2                    John Mueller, also with Ansa Assuncao.

 3                    THE COURT:  Good afternoon, everybody.

 4                    Let me just go through the timeline I have and then

 5          I'll tell you why I've asked you to come in.  And if there's

 6          anything incorrect about the timeline, you'll let me know.

 7                    October 14th, 2010, complaint is filed in the

 8          District of New Jersey.

 9                    January 31st, 2011 complaint is filed in the

10          Central District of California.

11                    May 2011, New Jersey class counsel and Samsung

12          agree to a term sheet which would conclude the relief to the

13          class subject only to confirmatory discovery and an

14          agreement on attorneys' fees.

15                    May to June 2011 there are attorney fees

16          negotiations.

17                    July 1st, 2011 there was a court ordered mediation

18          solely on attorneys' fees because that's the only issue in

19          dispute.  No agreement is reached.

20                    August 3rd, 2011, Central District of California,

21          settlement agreement is signed.

22                    August 16th, 2011, Central District of California,

23          class rescinds its settlement agreement after contacting the

24          New Jersey class counsel.

25                    August 22nd, 2011, Central District of California,
```

 1      class counsel moves to vacate their voluntarily dismissal.

 2              September 13th, 2011, I deny a motion to enjoin the

 3      California settlement proceeding, and to stay Samsung's

 4      motion to dismiss pending developments in the Central

 5      District of California.

 6              November 14th, 2011, Judge Nguyen in California

 7      denies the motion to vacate the voluntary dismissal.

 8              And then on November 21st, 2011 I enter the order

 9      that brings you here today.

10              My reasons for doing this are as follows:  And the

11      reason I particularly wanted the class reps here is that

12      since last May, over half a year, there's been an agreement

13      on the essential terms that would be in the best interests

14      of the plaintiff class, the clients, the people for whom

15      lawsuits are brought.  And both parties confirm to me in

16      writing that those agreements, the substantive agreements of

17      what relief would be given to the class members as

18      distinguished from attorneys' fees, that the terms of the

19      settlement with the class were not in dispute, and both

20      sides had agreed to a term sheet, the essence of the terms

21      and thus, as of last May, there was on the table the ability

22      for the clients to get relief that counsel on all sides

23      believe is full, fair and satisfactory.  And that goes for

24      the defendants as well.

25              Since last May, the only ball that has been in

 1          play, based on your representations to me that I'm

 2          summarizing from the various communications I've received

 3          from you in connection with the motion that you brought

 4          before me, the only ball in play is attorneys fees.   A

 5          genuine dispute.

 6                    Now, that gives me some serious pause.  I now am

 7          being asked to resurrect a motion to dismiss.  Because, not

 8          because the merits of the case are even at issue anymore.

 9          The only thing that's at issue is the fight between you

10          about attorneys' fees.  Which are only going to grow

11          greater, greater and greater, as you continue what's

12          essentially Pyrrhic warfare.

13                    I say Pyrrhic because -- and you're putting work on

14          to the Court that it normally wouldn't have to do because

15          essentially the dispute in this case has been settled.  Why

16          am I to drop all the other cases that really need my time

17          and attention to decide a motion to dismiss in a case in

18          which both sides have agreed on the essential terms of the

19          substantive settlement?

20                    It concerns me in multiple ways.  One, it's the

21          archetypical example of this lurking conflict of interest

22          between plaintiffs' counsel and the plaintiffs themselves

23          and the class members that is inherently always there in

24          class actions and has been noted in the literature and in

25          cases, and in even the Third Circuit task force report as

1       being there.   But it's putting it very squarely front and
2       center.

3                    Now, that's giving me some serious concern and
4       pause.   And I can understand from defendant's point of view
5       that you want to know your total global potential exposure
6       before you finalize a settlement.   So I understand that and
7       I'm not saying you're in an ethical quandry, but as a result
8       you're in essence saying to the Court, you know, be a
9       gladiator.   Go -- we're fighting it out over attorneys'
10      fees, so we're going to give you something.   Please, Judge,
11      stop all your other work, and decide a motion to dismiss,
12      which really isn't necessary to decide, but do it anyway,
13      because the case has been settled, because we can't agree on
14      attorneys' fees.   There's something very unsettling about
15      that which I'm sure you can understand.

16                   Having seen all that, getting to the heart of it in
17      my usual rapid manner, I thought we'd bring you in and see
18      if we could find a way to a resolution, either a full
19      resolution or a procedural resolution, in a way that would
20      allow two things to happen:   One, the class members of whom
21      there are five representatives present, others that are on
22      the phone, and I'm happy to hook them up if anybody thinks
23      it would be beneficial to have them hooked up.

24                   Does anybody think that?   No, yes?
25                   MR. SCHWARTZ:   I don't think it's necessary.

 1      Obviously, they're available if Your Honor wants somebody
 2      hooked in.

 3                THE COURT:  Understood.

 4                I just wanted to be sure because of this issue that
 5      plaintiffs are actually hearing this and thinking about it.
 6      Because all the people that they are representatives for
 7      have not gotten the benefits of a settlement that has been
 8      on the table for seven or eight months.  I'm not --
 9      approximately.  Because of this attorneys' fees dispute.

10                And while I understand that tempers and emotions
11      run high in class actions, it's always essential to remember
12      that the clients come first.

13                So now we have, we're sort of in this arena.  We're
14      also, we, the courts, my staff, myself, we're not free
15      goods.  We're not someone you ring a gong and say, okay, go
16      do this work, which is really advisory and unnecessary and,
17      frankly, there's not even a ripe controversy about the
18      motion to dismiss.  It's really something new while you
19      continue to fight about attorneys' fees, which doesn't
20      really strike me as a laudable use of my time or my staffs'
21      time, and does tend to treat us as a kind of free goods
22      sitting here, which perhaps in a very light docket
23      jurisdiction would make some sense.  But this isn't one of
24      those.

25                So I have a number of thoughts, but I wanted to put

1    those out on the table so that you would understand the

2    reasons why I've asked you to come in.  They're multiple,

3    they're more, but that's where we are.

4          So how do we find a way through this apparent

5    impasse without just saying, okay, so now we're sending all

6    the boxers out into the ring again to box, and the first

7    thing we have to do to keep boxing only about attorneys'

8    fees, Judge, is for you to write an opinion about the

9    substance of the case.  Not so fast.  And not without

10   exhausting every other possibility.  And not without me

11   thinking long and hard about what I will do with respect to

12   the attorneys' fees if I'm required to do that at the end of

13   the day.  And that could go either way.  There could be an

14   augmentation, if it's an unnecessary act, and there could be

15   a reduction, if it's an unnecessary act.  Depending on how I

16   view the players, their motivations, and the reasons that

17   they're putting the plaintiffs and me in this bizarre

18   position.

19         So what I'd rather do than have to pen something

20   like that, is have the intelligent minds that I see looking

21   back at me think about this, not just say that's it, we

22   can't agree, therefore we're back in court fighting about

23   something we've resolved.  But, rather, saying is there a

24   way to slice off the attorney fees question, either agree on

25   it today, or agree on a high-low that goes to binding

1    arbitration, or some procedural mechanism so that valuable

2    court time is not spent on a needless, I'm not even sure

3    what I'd be writing.  I'd be writing an opinion the parties

4    don't really need, the outcome of this, because they've

5    agreed to the terms of a settlement.  But they won't sign it

6    because they can't agree on how much money gets exchanged

7    between them.  Isn't that a pretty picture?

8          And by the way, the plaintiffs, the people for whom

9    this case is brought, have had certain rights available to

10    them since last May, but they can't take advantage of them

11    because everybody's fighting about attorneys' fees.  I'm

12    developing course materials right now on a professionalism

13    issue, and this thing is rapidly making its way into my

14    course materials.

15          So any ideas?  I'll start with the defendants.

16          MR. ASSUNCAO:  Thank you, Your Honor.

17          Well, if Your Honor wants to conduct maybe some

18    discussions with counsel privately, and see if we can get a

19    little closer on the fee issue, I think that would be a good

20    start.

21          And if that doesn't help, then we can look at those

22    other options that you may have in mind.

23          Certainly, from Samsung's standpoint, from the

24    beginning of this case eight months before the first lawsuit

25    was filed, Samsung had recognized the issue with the

1        capacitors, had begun providing free repairs to its

2        customers.  The suit was filed, they immediately began

3        settlement discussion with plaintiffs counsel, which

4        ultimately resulted in the term sheet.  And the only issue

5        that has been outstanding since then has been the fee issue.

6                THE COURT:  I know that.  I don't mean to interrupt

7        you, I know that from you, and I know that from your

8        adversary.

9                MR. ASSUNCAO:  Right.

10               THE COURT:  Which is why, when I see an application

11       for me to stop everything else I'm doing, which is huge

12       amounts of it, you see what the dockets are like.  And write

13       something that's totally unnecessary to write, just so you

14       guys can keep warring, it seems to me to be -- I'm trying to

15       think of a polite word that encompasses what I'm thinking.

16       I'm not going to say it.  Can't think of a polite word.

17              MR. ASSUNCAO:  And, Your Honor, last thing we want

18       to do, in fact the whole idea about approaching initially to

19       discuss settlement was to avoid the motion practice and the

20       term sheet was entered into before any depositions, any

21       substantial discovery being exchanged, any motion to

22       dismiss, to avoid this very thing.

23              THE COURT:  Understood.

24              And laudibly so.

25              The problem we now have is there's got to be a way

1       where the fine minds of the assembled people in this room

2       can come up with a way to make this happen.

3              I don't want an old, stale and, frankly,

4       meaningless set of motion papers taking up our time and

5       further delaying the right to relief that everyone agrees on

6       on behalf of the five gentlemen who are here, the six more

7       or so on the telephone, and countless others in the class.

8       And it's -- so I am essentially ringing the gong with my

9       mantle that requires me to look for justice and saying, I'm

10      worried about this.  Maybe you aren't, maybe you aren't, but

11      I am.

12             MR. ASSUNCAO:  We certainly, from Samsung's

13      standpoint, they are worried about it.

14             Because, number one, they're incurring costs and

15      they have incurred substantial costs that they would

16      otherwise not have incurred.  That was the whole idea of

17      entering into the settlement in the first place, number one.

18             And number two, there are additional things that

19      are happening that are going to further cause -- increase in

20      costs, defense costs, on an issue that they again want to

21      put behind them, and have thought they were very close to

22      putting behind them seven months ago.

23             THE COURT:  Okay.

24             Can I ask you to be not, gentlemen -- please, I've

25      heard from you, I'd like to give your adversary, unless

1     there's something else you absolutely felt you had to say.

2                     MR. ASSUNCAO:  No.

3                     The only thing is I think for my benefit, if we had

4     Your Honor, if you have some time today, just have meetings

5     with counsel and see, and maybe we can work something out.

6     And if the answer is no to that, then we can discuss other

7     ideas of trying to get through this impasse.

8                     THE COURT:  Okay.

9                     All I would ask you to do is start thinking about

10    all the ideas now.  I want to move this train to a quick

11    resolution.  I think that is in the best interest of justice

12    and it avoids this thing kind of beginning to look like a

13    black-eye for the legal profession.

14                    MR. ASSUNCAO:  Certainly.  Understood.

15                    THE COURT:  Okay.  Yes.

16                    MR. SCHWARTZ:  Your Honor, we appreciate your

17    concerns, and we share the frustration.  Because we do want

18    to get the settlement we negotiated delivered to the class

19    members.  And I agree with Your Honor that it really is time

20    to bring this to a close and get some finality here.

21                    There are issues with this settlement, because

22    there was confirmatory discovery requirement, and there are

23    some issues that will have to be addressed because the

24    agreement we had was these are the minimum terms and if the

25    confirmatory discovery, which we were promised, and which

 1      the representations would show that the terms are right,

 2      that --

 3              THE COURT:  How long would this confirmatory

 4      discovery take?

 5              MR. SCHWARTZ:  It would not take long.  Under the

 6      original contemplation of the settlement agreement --

 7              THE COURT:  Have you done anything?

 8              MR. SCHWARTZ:  We.

 9              THE COURT:  since --

10              MR. SCHWARTZ:  Yes.

11              THE COURT:  Since -- what have you done since this

12      warfare broke out between you and California counsel?

13              MR. SCHWARTZ:  We have reviewed all the documents

14      produced from Samsung.  We have intakes, class members

15      contacting us on almost a daily basis.  We have reviewed

16      every intake.  We have, so we can understand exactly what

17      the scope of the capacitor problem is.  We had scheduled

18      some depositions which were going to happen next week when

19      we got put off the calendar because of Your Honor's order

20      saying discovery --

21              THE COURT:  They're not off the calendar.  I  --

22      they're still on the calendar if they're substantial.

23              I'm not -- do you understand how ridiculous it

24      seems to me to have you start taking discovery in a case

25      where both sides have sent me letters saying we've agreed to

1      the essential terms of a settlement here?

2              MR. SCHWARTZ:  Yes.  Even though those depositions

3      were going to be from our perspective so we can satisfy that

4      our minimum terms we negotiated --

5              THE COURT:  So you're saying to me these were just

6      confirmatory depositions?  I'm not buying it.

7              MR. SCHWARTZ:  We were in litigation, Your Honor,

8      with Samsung, so they were, for all purposes.  But first and

9      foremost, what we were doing -- but we have an idea how to

10     get past the fee issues, because I agree with Your Honor, it

11     makes no sense for the settlement to be stuck in the middle

12     because of the fee issue.

13             THE COURT:  Hasn't -- since the moment it started,

14     and it's taken eight months, and me being my usual stern

15     jawed self, to make it happen, which I don't like always to

16     be that, but apparently it's my role and I'll do it.  But I

17     think it behooves everyone to get this done.

18             MR. SCHWARTZ:  I agree.

19             THE COURT:  And, frankly, what it's doing is it's

20     raising frontal to me and to any colleagues I talk to, this

21     issue about battles between different sets of class action

22     counsel in different jurisdictions, and the waste of court

23     time that that engenders.

24             I have that very issue with a draft opinion in

25     another case.  It's not as stark, it's different than this.

1      It's in some ways -- it's in some ways different, but the
2      principle remains the same.  And that is the sense of double
3      work being thrown at the United States court system where
4      it's not necessary, simply because class action groups of
5      lawyers are fighting with each other.  They represent the
6      same classes, but file overlapping, essentially, the same
7      lawsuits in multiple jurisdictions, and have no problem
8      sapping court time that way.  That's wrong.  It has to stop.

9              And here you are back in New Jersey where you
10     wanted to be, and I seem to be the one having to come up
11     with a way to make it stop.

12             But, by golly, if this has to become an issue on
13     the national agenda, let it be.  Because we are not just
14     sitting here twiddling our thumbs waiting for something to
15     do.  We're not just sitting here waiting to have two
16     different judges have the same class and have double the
17     work.  It's not fair and reasonable, nor sensible use of
18     judicial resources, which are paid for by the taxpayers of
19     the United States, to solve real controversies that need
20     solving.  There's one real controversy that needs solving,
21     this class.  And this class is one class.  But we've got
22     attorney warfare rising above the needs of the class.
23     That's a big concern with these multiple jurisdiction
24     battles.  And I expect counsel to resolve it so that I don't
25     have to write about it.

1           MR. SCHWARTZ:  Fully understood.

2           And so what I suggest --

3           THE COURT:  The reason I asked you here, gentlemen,

4    is so you would understand from my mouth what's going on.

5    Because you represent the class.  You're not these guys

6    tools.  You are independent members of a class, and you are

7    their representatives, and it's your job, if need be, to

8    explain to them why it is that the settlement that was

9    essentially agreed to eight months ago hasn't happened yet.

10          So it's not like you're simply nominal

11   representatives, which many plaintiffs class members feel

12   they are.  You're not.  You are the client.  And you have

13   jobs and duties as the client.  Which you're either doing

14   well or doing poorly.

15          And the extent to which any incentive award is

16   given is based on how well or poorly you do your job

17   representing the best interests of your class, which had a

18   settlement on the table without any serious objection last

19   May, that's why you're here, gentlemen.

20          I'd say ladies and gentlemen, but there are only

21   gentlemen.  If there were women here they we wouldn't have

22   the issue, because they would have gotten to the heart of it

23   already.  That's a joke.

24          We mean to -- I saw you turn sideways, I thought I

25   didn't see somebody.  All right.

 1          So, any ideas on this whole thing?  I'm happy to
 2     meet with each of you once, privately.  I've got a
 3     conference call in another matter at 3 o'clock.  That gives
 4     us 52 minutes, approximately 57 minutes, something like
 5     that.  53 minutes.

 6          I'm happy to try to have one meeting with each of
 7     you.  What I'd ask you to do while I'm meeting, be thinking
 8     on more than one track and involve your clients as well.
 9     Because they may have something to say about this.  They
10     have a right to have -- say something about this.

11          One possibility is sever off the fee fight and
12     throw it -- first try and negotiate it, perhaps agree to
13     binding arb.  If you must come back to me.  Not non-binding.
14     Either binding arb or you'll battle it out with me and I'll
15     put people on the stand and rule as I see fit.  Or negotiate
16     the total sum today, or come up with a high-low agreement
17     and go to binding arb subject to a high-low.  Or anything
18     else your wise minds can come up with.

19          You plaintiffs will have to consult with your
20     clients.  Obviously, Samsung will have to consult with its
21     client.  I don't expect this to be delayed.  There's got to
22     be a way that the relief that's been negotiated can occur.

23          If there's confirmatory discovery, I have no
24     problem with confirmatory discovery only being continued on
25     the same dates that you had set out for deposition.  But

1      that's it.  I'm not launching a completely moot battle,

2      simply because lawyers can't agree on fees.  Just not what I

3      do.  In fact, I'm not even thinking it's wise or just.

4           Okay.  So we have a form that we'll give you, and

5      it's totally voluntary whether you agree with it or not, and

6      essentially the form says, do you -- and you don't have to

7      consent.  It's truly fine by me.  It asks if you consent to

8      meeting, one side meeting with me in the absence of the

9      other side, and then the other side meeting with me in the

10     absence of the first side.  It's essentially serial ex parte

11     discussions in my role as mediator.  It's not mandatory.

12     And, indeed, I never do it in a bench trial.  This is

13     clearly not a bench trial.

14          The only concern I have is I don't want you to sign

15     that form if you would have any objection to having those ex

16     parte communications if one of the ultimate means of

17     resolving this case is a fee litigation over which I

18     preside.  I will not send this fee litigation issue to

19     another colleague.  I don't think that's right.

20          And to the extent this resembles a bench trial

21     where I would send it to another colleague, that's the

22     reason for my caution.  I'm not going to do that.  So if by

23     signing this form you're essentially agreeing for that rare

24     thing to happen, and that is to have mediation with me,

25     knowing that if there's no other resolution of the fee

 1    battle other than a hearing, and I call it, please don't go

 2    down that road.  I would rather send you to a Magistrate

 3    Judge or a private mediator who can meet with you forthwith.

 4    And then I stay untainted as it were, and able to preside

 5    over a true fee battle, if we get to that.

 6            Your thoughts on that.

 7            MR. SCHWARTZ:  Your Honor, what we had -- well, we

 8    had proposed --

 9            THE COURT:  Because that issue -- sorry.  I don't

10    mean to interrupt you.  Because that issue can't go to a

11    jury, we will never ask a jury to decide that issue.  That's

12    my job.

13            MR. SCHWARTZ:  Right.

14            THE COURT:  And that's why I hadn't done this

15    already.  The only reason I mentioned it is because I'm

16    frustrated that I sent you to court mediation once and it

17    didn't work.

18            MR. SCHWARTZ:  Right.

19            And we agree with Your Honor that severing the fee

20    issue from the settlement issue makes sense.

21            We have proposed to Samsung, and we remain willing

22    to have the fee decided without any preconditions or with a

23    high-low.

24            And, frankly, Your Honor, we're prepared to have

25    Your Honor decide it without preconditions.  We're prepared

JOHN KEVIN STONE, CSR

1    to have Magistrate Shwartz decide it without preconditions.

2    We're prepared to go to former Judge Orlovsky to decide it

3    without preconditions.  Obvious subject to Your Honor's

4    obvious rerule and approval and evaluation.  And Judge

5    Orlovsky was a mediator that was chosen by Samsung based on

6    a prior experience with Judge Orlovsky.  So we were willing

7    to do that.

8              We're willing to have Your Honor pick someone else

9    who is a wise person to be the arbitrator.  We agree that we

10   should try to sever this from the settlement, so we can get

11   the settlement, you know, make sure the terms are right and

12   then get the settlement hopefully approved, and then for the

13   fee issue, have it decided, and which ever side has

14   miscalculated as to what is a fair fee, then they'll have to

15   live with that.

16             I did have this situation happen once.  It was a

17   case very similar.  We settled relatively early, it was a

18   full recovery for class members, more like what we have

19   negotiated here.  And then when we were, Your Honor, before

20   former Justice Pollack as a mediator, we agreed rather

21   quickly, let's sever, with Judge Infante and JAMS in

22   California, with the District Court Judge's approval, went

23   and had the mediation.  Turns out that mediation went pretty

24   well for me than the defendant.  But that's not really

25   relevant.  The relevant thing is we got a vehicle to have it

 1      settled, it got settled, Judge Infante gave a very nice

 2      opinion and decision, which the District Court Judge was

 3      able to evaluate and not be overburdened with having to do

 4      all the work herself, because we understand that judges have

 5      very heavy dockets, and there are important issues with lots

 6      of people to come before Your Honor, in every District Court

 7      in the country.

 8              THE COURT:  Let me ask you.  Is there a -- is there

 9      a move afoot among the class action firms to stop having

10      this problem happening again?  I'm at some point going to

11      call Judge Nguyen and start a judges dialogue about this.

12              MR. SCHWARTZ:  My understanding is that the

13      California -- the lawyers in that California case are done

14      with this case.

15              THE COURT:  Oh, I'm sure they are.  That doesn't

16      mean that Judge Nguyen and I are done with the issue.

17              MR. SCHWARTZ:  Right.

18              THE COURT:  I don't want to see this again.

19              MR. SCHWARTZ:  Neither do I.  I feel it's

20      frustrating.  Because it is unfair to Your Honor to have

21      this drag on.  I think it's unfair to all of us.  And I

22      think we have to get it resolved.  And I am willing --

23              THE COURT:  I'm not talking about the drag on

24      problem.  I'm talking about filing multiple suits for the

25      same class.  There ought to be a way that that doesn't

 1    happen.

 2              MR. SCHWARTZ:  I think the rules, with the addition
 3    of Rule 23(g) is the interim counsel appointment, that from
 4    my perspective that's what the interim counsel appointment
 5    was designed to do.

 6              And I can tell Your Honor, when we first went down
 7    this road early on in the case with Samsung's former
 8    counsel, Basilus Sparh, they specifically requested us,
 9    because there were multiple cases filed, they were asked to,
10    as they called it, herd cats, get some kind of leadership in
11    place.  So they knew they were talking to one person and one
12    group of people with authority, and that's why both parties
13    came into Your Honor with a interim counsel appointment
14    order proposal, which was signed.  And, frankly, we thought
15    that regardless of whether the settlement talks were
16    successful or went down the litigation track, we thought
17    that procedure was one in place so we wouldn't have the
18    issue of what do you do if people three months down the
19    road, six months down, a year down the road decide, oh,
20    there's a settlement that might be available for someone to
21    be a vehicle to drive home, let's file something and do it.

22              THE COURT:  Is there any procedural mechanism other
23    than an MDL for this kind of stuff?

24              MR. SCHWARTZ:  An MDL obviously is one way to deal
25    with federal court, multiple federal court cases.

1                With respect to state court cases that can be

2       filed, there's obviously the All Writs Act, which is  --

3       certainly power should be exercised very judiciously.

4                I do think fundamentally though, Samsung, you know,

5       is a New Jersey based company, they're here in this court

6       and the court does have jurisdiction over Samsung.  I think

7       both of us are hearing Your Honor that for this problem in

8       this case, once, Your Honor wants to resolve.

9                THE COURT:  All right.

10               We're going to resolve my global issue to make sure

11      this never happens again.  But although at some point I will

12      not stop until I see a resolution.  It's too often that

13      class actions look like an attorney industry rather than

14      representation of a client.  That shall not happen under my

15      watch.  You've got a client, they're here.  They have a

16      voice.  They don't get an incentive award if they don't

17      speak up early, often and vociferously for the rights of the

18      class.  Which is different from the lawyers' right to a fee.

19      That's why they're here.  I'm sure they'll share the good

20      news with everybody else.

21               MR. SCHWARTZ:  And I can assure Your Honor that our

22      class representatives have been in contact with us, been

23      fully informed, the class representatives.  We have a

24      cross-section, we have a retired judge, we have another

25      attorney, we have people who work in various industries, you

 1      know, across sections of regular people, and they know what

 2      the situation is, and they understand what the fee issue is,

 3      and we have discussed the issue of severing the fee from the

 4      settlement.

 5              THE COURT:  I understand.  But -- and that's

 6      obviously in your interest.  But your adversary would say,

 7      and justifiably have the position, that they can't agree to

 8      an open-ended exposure.  Right?

 9              MR. SCHWARTZ:  Right.

10              THE COURT:  And so that's not fair to them.

11              And so we need to come up with a methodology that's

12      fair to all, but that gets the lawyers out of the pickle

13      that they've worked their way into.

14              Frankly, had Judge Nguyen allowed that other

15      settlement to be reinstated, you would be in the same

16      position as my other case was, where two warring attorneys

17      filed the identical action, each separately on behalf of a

18      different class representative.  And one side settled, and

19      the other side did not.  And despite a lot of vitriolic

20      words, it was a full, fair, complete settlement, and nobody

21      even had any objection they could thing of to file against

22      the other settlement.

23              And so the firm that didn't settle, ended up to

24      having voluntary dismiss, because the class just left them.

25      The class went along with the settlement and they didn't

1    negotiate the settlement, they were left with litigation

2    with no client.  But that still wasted a lot of court time.

3         The only trouble there was I was all the court

4    time, both cases were filed with me.  Why I'm accutely

5    sensitive to this issue.  But I don't want to see -- I've

6    got this issue coming up more and more often, and attorneys

7    viewing these cases as their own industry.  It's not.  I

8    know you know that.

9         MR. SCHWARTZ:  Yes, I do.

10        THE COURT:  But I intend to drive that point home

11   as often as possible to both sides.

12        All right.  What are we --

13        MR. ASSUNCAO:  Your Honor, if I just may, because

14   you touched upon a subject that probably opens the door,

15   this additional disclosure to the Court.  Three new lawsuits

16   have been filed similar to these.

17        THE COURT:  Where?

18        MR. ASSUNCAO:  One in New York, one in Oklahoma and

19   one in California within the last three to six weeks.

20   Samsung has been served with two of them, the third has not

21   been served yet.

22        THE COURT:  Understood.

23        But if you settle on behalf of the class and there

24   are not a lot of opt outs, then the class evaporates.

25        MR. ASSUNCAO:  I understand that, Your Honor.  But

1    I just wanted to let you know.

2              THE COURT:  Yes.

3              No, look, I didn't know that.  I'm not surprised.

4    Because essentially, after awhile, it looks suspiciously not

5    like relief for consumers, but rather, hey, one more mouth

6    at the trough, and that's an issue about which I feel

7    strongly, about the professionalism of my profession.  But

8    if we can get -- it behooves you to try to get this thing

9    resolved as fast as possible, get the machinery in place.

10             MR. ASSUNCAO:  Sure.

11             THE COURT:  To provide notice to the class, you

12   know, and get this done.  Because something's got to deter

13   all that.

14             Now, presumably -- and then, by the way, an MDL is

15   not the only solution, because then there are state court

16   lawsuits.

17             MR. ASSUNCAO:  MDL may make things more complicated

18   and prompt additional filings, which it tends to do.

19             THE COURT:  It could.

20             I'm -- having had, I don't know, seven or eight

21   MDLs or so, I agree, it's not a panacea.  Sometimes works

22   extremely well, sometimes not.

23             MR. ASSUNCAO:  Well, you brought up this signing of

24   a waiver in terms of meeting with the court individually,

25   the parties meeting with the court, we're still willing to

    1       do that, Your Honor.  Samsung -- I don't know if plaintiffs

    2       counsel is.

    3                 THE COURT:  Yes.  So that's the question.

    4                 I want you to think about this in a worst case

    5       scenario.  I don't expect us to get there, but, if the worst

    6       case scenario, none of the affirmative methods I've been

    7       throwing out as a possible idea, i.e. arbitration,

    8       high-lows, if none of those works, then I would have to be

    9       the one that would have to hear from everybody and decide

   10       what's a fair legal fee.  And I don't want anybody at that

   11       time saying, because I confided in you or you had ex parte

   12       communication settlements with me you really can't decide

   13       that.  So I really want to give you time now to huddle with

   14       each other and think about it before you agree, and then I

   15       would want you to state on the record that you would agree

   16       to that, notwithstanding.  Because I really don't think it's

   17       at all fair to rope yet another judicial officer into this

   18       battle.  I mean everybody's busy and has real controversies.

   19       Everybody knows there is an attorneys fee.  The only

   20       question is what's the right number.

   21                 So I'm going to give you five minutes or more, if

   22       you need.  If you want to confer with your clients.

   23                 Does everybody understand the issue I'm asking them

   24       to decide?

   25                 MR. ASSUNCAO:  Yes.

```
 1              MR. SCHWARTZ:  Yes.

 2              THE COURT:  All right.

 3              I'll give you five minutes.  I'll be back out.

 4              MR. ASSUNCAO:  Great, Your Honor.

 5              MS. BURO:  All rise.

 6              ( After a brief recess court resumed ).

 7              MS. BURO:  All rise.

 8              THE COURT:  You may be seated very briefly.

 9              Has each side had a chance to confer about the

10      procedural question?

11              MR. SCHWARTZ:  Yes, Your Honor.

12              THE COURT:  All right.

13              Mr. Assuncao?

14              MR. ASSUNCAO:  Yes, Your Honor, I have as well.

15              THE COURT:  Yes.  Okay.

16              So what's the position?

17              MR. SCHWARTZ:  We're prepared to sign any form Your

18      Honor wants us to sign, and we're prepared to talk to you

19      with the conditions you set.

20              THE COURT:  Okay.

21              So you understand and agree that if another method

22      is not arrived at for a neutral to decide the fee battle

23      between you, that I will be deciding it without a jury.

24              MR. SCHWARTZ:  We are -- we welcome Your Honor

25      deciding it if we can't negotiate it.
```

```
 1                    THE COURT:  All right.

 2                    MR. ASSUNCAO:  We also agree, Your Honor.

 3                    THE COURT:  And nobody feels arm-twisted?  Because

 4         it was certainly not my intention.

 5                    MR. SCHWARTZ:  Not at all, Your Honor.

 6                    MR. ASSUNCAO:  No, Your Honor.

 7                    THE COURT:  Okay.

 8                    Then let's very briefly begin.  We may be

 9         interrupted by a marshal showing up in the middle of this,

10         but -- and there may be other short delays.

11                    I have to get on a call at 3 o'clock.  But we might

12         be able to make substantial progress before that.

13                    Who would like to meet with me first?  Is there

14         anything else?  We're now going to go into the mediation

15         mode.  I'm going to tell the court reporter he no longer

16         needs to take this down.  Anything you'd like to say to each

17         other before we meet privately?

18                    MR. ASSUNCAO:  I don't think so.

19                    MR. SCHWARTZ:  Just that we would like to get this

20         done both for the class and get it done.

21                    THE COURT:  Okay.  All right.

22                    ( Court adjourned ).

23

24

25
```